UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kathleen Werst,
    Plaintiff

    v.                                                    Case No. 09-cv-392-SM
                                                              Opinion No. 2011 DNH 162
Wal-Mart Stores, Inc.,
    Defendant


**O R D E R**

On December 1, 2006, Kathleen Werst was severely injured while shopping at a Wal-Mart store in Hudson, New Hampshire. She brings this common law negligence claim, saying Wal-Mart breached its duty to warn her of and/or to guard against the dangerous condition that caused her injury. Wal-Mart moves for summary judgment asserting that, on the record presented, Ms. Werst cannot carry her burden of proof as to each of the essential elements of her claim. That motion is denied.


**Standard of Review**

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Background

Viewed in the light most favorable to plaintiff, Ms. Werst, the pertinent facts are as follows. On December 1, 2006, Werst and two friends went to the Wal-Mart store in Hudson, New Hampshire, to purchase holiday gifts for needy children and families in her community. At some point, Werst saw an item she wished to purchase for a young girl on her shopping list. Unfortunately, the lower shelves of the display were empty. Werst Deposition (document no. 12-2) at 38. But, when she looked up, she saw what she described as "the overstock," on the top shelf of the display unit. <u>Id</u>.

The item was too high for her to reach, so she placed her right foot onto the lower shelf of the display unit and, with her right hand on the unit, she pulled herself up so she was standing on the first shelf, approximately 18 inches off the ground. <u>Id</u>.

40-42. Then, with her left hand, she reached for the item. But, because the item was set back on the shelf, she couldn't grasp it. Id. at 42. She described what happened next as follows:

> So then Carla [one of Ms. Werst's friends with whom she was shopping] told me to get down, and I knew at that point that I wasn't going to be able to reach it and I got down, and as I came down, my rings got hung up [on the top of the shelving unit's vertical support post], and it was one very fluid motion. It wasn't, you know, like a jerk. It wasn't – it was just – I knew it hooked, and as it hooked, it pulled, and it came through, and I looked, and I was bleeding.

Id. at 43. See also Wal-Mart Stores Customer Incident Photo Sheet (document no. 17) (a photograph of the shelving unit itself, as well as a diagram drawn by plaintiff, showing where her finger/rings caught on the vertical support post).

The traumatic injury to Werst's finger is known as a "degloving injury." When she stepped down from the bottom shelf and, at the same time, caught her rings on the top of the shelving unit's vertical support, the force of the downward motion against the semi-fixed rings stripped the skin and muscle off her left ring finger, down to the bone. In the process, her finger was fractured in several places. She was taken to the hospital and, over the course of several months, endured a number of surgical procedures aimed at saving and reconstructing her finger. Those efforts failed and, in May of 2007, her left ring

finger was amputated.  Id. at 59.  She then underwent additional surgery to reconstruct her hand, which involved amputating her pinky finger and re-attaching it in place of her missing ring finger.  Id. at 12-14.  In total, she underwent six surgical procedures over the course of approximately 36 months.  Id. at 58.  As a result of her injury, she retains movement and sensation in only her thumb and index finger on her left hand; the remaining two fingers on her left hand "don't work."  Id. at 14.

## Discussion

In the sole count of her complaint, Ms. Werst asserts that Wal-Mart breached its duty "to exercise reasonable care in the maintenance and operation of the store; to refrain from [maintaining] unreasonably hazardous conditions for shoppers upon the premises; [and] to abate any hazardous conditions" of which it knew or should have known.  Complaint (document no. 1) at para. 12.  More specifically, she asserts:

> Defendant <u>should have realized the danger</u> that a customer might be injured by reaching for merchandise displayed for sale on shelving units with <u>sharp steel edges</u>.  The Defendant <u>should have taken measures to guard against injuries occurring</u>, such as not displaying items on the top shelf which invites customers to reach above the <u>sharp edge</u> of the shelving, or by simply placing caps on the tops of shelving units to prevent the edges from being exposed.  An additional measure the Defendant could have taken to guard against such an injury . . . would be to warn

>       patrons of the danger of reaching for merchandise on
>       the top shelf due to the sharp edging of the display
>       shelves.

Plaintiff's memorandum (document no. 15) at 7 (emphasis supplied).[1]  Plaintiff also testified in her deposition that the vertical posts had "sharp edges."

New Hampshire common law is unremarkable in providing that "[t]he elements of negligence are a breach of a duty of care by the defendant, which proximately causes the plaintiff's injury." Weldy v. Kingston, 128 N.H. 325, 330 (1986).  See also Goodwin v. James, 134 N.H. 579, 583 (1991) ("In order to recover for negligence, a plaintiff must show that 'there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover.'") (citation omitted).  The existence

---

[1]     Parenthetically, the court notes that there is evidence in the record suggesting that, at least on some of the shelving units in the store, Wal-Mart posted the following warning:

>                    ATTENTION
>               Associate / Customer
>               Do Not Climb On or In
>                the Steel Bins / Racks

Customer Incident Photo Sheet (document no. 17).  While plaintiff testified that the presence of such a warning "probably" would not have dissuaded her from climbing on the shelving unit in an effort to reach the item she sought, Werst Deposition at 39, she also testified that she did not see such a warning on the shelving unit at issue in this case, id. at 38.  Accordingly, for purposes of ruling on Wal-Mart's pending motion, the court has assumed that there was no such warning.

and scope of the duty owed by a defendant are questions of law, to be resolved by the court. See, e.g., Hungerford v. Jones, 143 N.H. 208, 211 (1998). And, as the New Hampshire Supreme Court has noted, concepts of "duty" and "foreseeability" are very much intertwined.

> In order to recover for negligence, a plaintiff must show that there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover. Generally, persons will not be found negligent if they could not reasonably foresee that their conduct would result in an injury to another or if their conduct was reasonable in light of the anticipated risks. Thus, duty and foreseeability are inextricably bound together. As noted recently in Goodwin, [134 N.H. at 583], we derive our concepts of duty and foreseeability from Chief Justice Cardozo's majority opinion in Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99 (1928). "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." Palsgraf, 248 N.Y. at 344, 162 N.E. at 100. Thus, persons owe a duty of care only to those who are foreseeably endangered by their conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.

Manchenton v. Auto Leasing Corp., 135 N.H. 298, 304 (1992) (citations and internal punctuation omitted). And, of course, "[o]ne who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person." Palsgraf, 248 N.Y. at 345, 162 N.E. at 101.

So, as a general proposition, business owners have a duty to protect and/or warn their customers, employees, and business invitees against known and reasonably foreseeable dangers on the premises.

> [P]remises owners are governed by the test of reasonable care under all the circumstances in the maintenance and operation of their premises. A premises owner owes a duty to entrants to use ordinary care to keep the premises in a reasonably safe condition, to warn entrants of dangerous conditions[,] and to take reasonable precautions to protect them against foreseeable dangers arising out of the arrangements or use of the premises. Accordingly, under New Hampshire law, a premises owner is subject to liability for harm caused to entrants on the premises if the harm results either from: (1) the owner's failure to carry out his activities with reasonable care; or (2) the owner's failure to remedy or give warning of a dangerous condition of which he knows or in the exercise of reasonable care should know.

<u>Rallis v. Demoulas Super Markets, Inc.</u>, 159 N.H. 95, 99 (2009) (citations omitted). Here, plaintiff invokes the second theory of liability identified in <u>Rallis</u>. She asserts that Wal-Mart had (and breached) a duty either to guard the top edges of the shelving units' vertical supports, or warn her of the potential dangers posed by those supports – dangers she says Wal-Mart knew or should have known existed. <u>See</u> Plaintiff's memorandum at 7. As to that particular theory of premises liability, the New Hampshire Supreme Court has observed:

> With respect to the second theory of liability – the owner's failure to remedy or warn of a dangerous

>     condition of which he knows or in the exercise of
>     reasonable care should know - the landowner's duty of
>     care depends upon whether he had <u>actual or constructive
>     notice</u> of the dangerous condition.

<u>Rallis</u>, 159 N.H. at 99 (emphasis supplied).  And, whether a landowner had actual or constructive knowledge of a dangerous condition is generally a question of fact for the jury.  <u>See</u> <u>Id</u>. at 100.

So, to avoid summary judgment, Werst must point to evidence from which a jury could plausibly find that Wal-Mart knew, or should have known, that the unguarded tops of the shelving supports posed a risk of injury to customers.  She has, however, done little to carry that burden.  First, she has pointed to no evidence that Wal-Mart had <u>actual</u> knowledge of the alleged danger (e.g., past injury reports from any Wal-Mart stores; warnings from employees, suppliers, or other customers that the posts pose a danger; industry or regulatory standards; the shelving manufacturer's warnings or assembly instructions; etc.).

With regard to Wal-Mart's alleged <u>constructive</u> notice, Werst simply points to the allegedly "sharp steel edges" of the tops of the vertical supports and Wal-Mart's supposed enticement to reach for overstock on the high shelves.  She implicitly suggests that the sharp edges are not only dangerous, but that Wal-Mart should

have recognized that dangerous condition simply through observation and then done something to prevent the condition from causing injury, such as the one she suffered. <u>See</u> Plaintiff's memorandum at 7.

One can certainly imagine cases in which the evidence is so lacking that a court could conclude as a matter of law, that no properly instructed jury could plausibly find that the landowner should have recognized a particular allegedly dangerous condition on its premises. <u>See, e.g.</u>, <u>White v. Home Depot U.S.A., Inc.</u>, __ F. Supp. 2d __, 2011 WL 2947038 (S.D.W.Va. July 19. 2011). Given the paucity of evidence presented by Wertz, this case is tiptoeing along the dividing line between viable and meritless claims. But, in the end, the court is persuaded that liability here turns on unresolved factual issues – whether the described condition was dangerous; whether Wal-Mart should have known of it; and, if so, whether Wal-Mart adequately warned of it. Under the circumstances presented, those issues are properly resolved by a jury. <u>See e.g.</u>, <u>Elliot v. Sears, Roebuck & Co.</u>, 30 Conn. App. 664, 676, 621 A.2d 1371, 1378 (Conn. App. 1993) ("Whether the existence of a sharp protruding edge on which jewelry can be snagged during an uncontrolled fall rendered the ladder unreasonably dangerous is a question of fact to be determined by the jury, and the jury can draw their own reasonable conclusions

as to the expectations of the ordinary consumer and the knowledge common in the community at large.").

## Conclusion

For the foregoing reasons, the court concludes that the existence of a genuinely disputed material facts - that is, whether Wal-Mart had constructive knowledge of the alleged hazard - precludes the entry of summary judgment in Wal-Mart's favor. Accordingly, defendant's motion for summary judgment (document no. 12) is denied, without prejudice to its right to seek judgment as a matter of law at the close of plaintiff's case, when the evidentiary context is clear.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 4, 2011

cc:  Joseph P. Kittredge, Esq.
     Edmund J. Waters, Jr., Esq.
     Margaret A. Rubino, Esq.
     Blake M. Sutton, Esq.